General Maintenance Engineers, Inc. *v.* Pacific Vegetable Oil Corporation (et al., Appellant).

Argued October 6, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER, WRIGHT and WOODSIDE, JJ.

*Henry Thomas Dolan,* for appellant.

*Albert A. Drucker,* with him *Arno P. Mowitz,* for appellee.

Opinion by Woodside, J., April 21, 1954:

This is an appeal by the garnishee Rohm & Haas Co. from the order of the court below entering a judgment against the garnishee on a foreign attachment and from an order of the court discharging a rule to show cause why the judgment should not be stricken off.

On February 7, 1951, the plaintiff, General Maintenance Engineers, Inc., instituted suit by a foreign attachment summoning Rohm & Haas Co. as garnishee of funds belonging to Pacific Vegetable Oil Corp., the non-resident defendant. An affidavit of cause of action was filed the same day. The defendant never entered an appearance. On May 25, 1951 the plaintiff filed interrogatories upon the garnishee which were duly answered. Subsequently, plaintiff filed additional interrogatories which the garnishee also answered.

Without proceeding to judgment against the defendant and without filing a statement of claim, the plaintiff on July 10, 1952, more than a year after the issuance of the writ, moved for judgment against the garnishee on the answers to the original and additional interrogatories. After argument the lower court (Smith, P.J.) granted said motion on October 7, 1952 and entered judgment against the garnishee. The garnishee then petitioned the court (Alessandroni, J.) on October 21, 1952 to strike off the judgment against the garnishee on the grounds that no judgment had been entered against the defendant, no statement of claim has been filed and no determination had been made of the main issue between plaintiff and defendant. The Court issued a rule. After argument, it not only discharged the rule, but also entered a judgment nunc pro tunc against the defendant, Pacific Vegetable Oil Corporation.

The garnishee has filed an appeal from both orders of the court. There were some nice questions involving whether there was any debt due the defendant by the garnishee which was subject to foreign attachment, and whether the writ caught anything on the day it was issued. Everyone concerned with the case seemed to have become so intent on the determination of these questions, which were ably litigated over a period of approximately 18 months, that no attention was given to the basic and primary question—did the defendant owe the plaintiff anything?

Because of the manner in which we are disposing of this case we see no need to discuss the court's decision on the questions referred to above, except to say that we think the lower court was correct in its conclusion on the questions argued there before judgment was entered against the garnishee. Had judgment been properly entered against the defendant according to the provisions of the statute, we would have affirmed the lower court's judgment against the garnishee.

We are of the opinion, however, that judgment could not be entered against the garnishee without judgment first having been entered against the defendant, and that the court's effort to enter judgment against the defendant over a year after the writ was issued and without a statement of claim being filed was void. Process by foreign attachment is a creature of statute. It is not affected by the present Rules of Civil Procedure. See Rule 1402 Pa. R. C. P.[1]

Unlike attachment executions where judgment is obtained against the defendant *before* the writ is issued against the garnishee, in actions of foreign at-

---

[1] On April 12, 1954 the Supreme Court adopted rules of Civil Procedure relating to foreign attachment effective October 1, 1954. See Pa. R. C. P. 1251 et seq.

tachment the judgment is obtained against the defendant *after* the writ is issued.

This action contemplates two judicial determinations. Simply stated, one is whether the defendant owes the plaintiff anything, and the other whether the garnishee has anything of the defendant's from which the plaintiff can collect what the defendant owes him.

The issue between the plaintiff and the defendant is distinct and different from the issue between the plaintiff and the garnishee. *Lieberman v. Hoffman,* 2 Penny. 211 (1882).

The purpose of foreign attachment is to first secure a lien on defendant's goods in the hands of the garnishee and then to judicially determine what if anything is due from the defendant to the plaintiff. *Lieberman v. Hoffman,* supra.

A foreign attachment under our statute is equivalent of a summons for commencement of a personal action. *Raymond v. Leishman,* 243 Pa. 64, 69; 89 A. 791 (1914).

This reverses the usual procedure of obtaining judgment first and then issuing execution. It is in derogation of common law, a creature of statute, and thus strict adherence to all requirements is necessary. *Morinelli v. H. P. Garin Co.,* 100 Pa. Superior Ct. 510 (1930); *Hayes v. Gillespie,* 35 Pa. 155 (1860); See Standard Pennsylvania Practice Vol. 10, Page 188.

The Act of June 13, 1836, P. L. 568, provides for proceedings in foreign attachment. Prior judgment against the defendant is clearly required by section 54, 12 PS 2994 and Section 55, 12 PS 2995 of this act which provide:

"Section 54. *After judgment against the defendant in manner aforesaid,* the plaintiff may have a writ of scire facias against the garnishee, commanding him to appear before the said court at the next term, and

show cause, if any he have, why the plaintiff should not have execution of his said judgment, of the estate and effects of the said defendant, attached as aforesaid, in his hands or possession." (emphasis supplied).

"Section 55. *After judgment as aforesaid,* it shall also be lawful for the plaintiff to exhibit in writing, to every garnishee as aforesaid, all such interrogatories as he may deem necessary, touching the estate and effects of the defendant in his possession . . ." (Emphasis supplied). See *Melloy's Sons v. Deal & Burtis,* 124 Pa. 161, 166 (1889) and cases cited therein.

Even without statute or cases, common sense would suggest that judgment against the garnishee would of necessity be based upon judgment against the defendant, and that no judgment could be entered against the garnishee unless and until judgment was first obtained against the defendant.

The court below recognized the necessity of judgment against the defendant, but treated this as a mere technicality which could be corrected by entering judgment against the defendant nunc pro tunc. This the lower court did, but, in our opinion, without legal authority.

The Act of May 12, 1897, P. L. 62, 12 PS 2961, provides:

"If the plaintiff or plaintiffs in any foreign attachment now issued or hereafter to be issued out of any court of record in this Commonwealth shall not, within one year after the issuance of the writ, file a statement of his or their cause of action, such writ shall thereby abate without any further action by the defendant or garnishee, and the lien of said attachment upon the goods, chattels, lands, and tenements, rights and credits of the defendant, in the hands of the garnishees shall thereupon cease. . . ."

No statement of claim was ever filed in this case. Under the Act of 1897 the action therefore abated at the end of one year. When the lower court entered judgment nunc pro tunc it treated the affidavit of cause of action as a statement of claim. This was error. This pleading had all the attributes of an affidavit of cause of action. It was in the form of an affidavit; it was headed: "Affidavit Re Foreign Attachment". It contained allegations peculiar to an affidavit of cause of action such as the amounts allegedly due defendant by garnishee.

The affidavit contained no notice to plead as the statute requires of a statement of claim. Such characteristics of a statement of claim which it did have were equally those of an affidavit of a cause of action, for an affidavit must set out a good cause of action. *McLeod v. Hyman*, 272 Pa. 582, 116 A. 535 (1922); *Mindlin v. Saxony Spinning Co.*, 261 Pa. 354, 104 A. 598 (1918).

It is well settled that the Act of 1897 refers to a formal statement of claim and not to an affidavit of cause of action which cannot take its place. *Lehigh Coal & Navigation Co. v. Skeele Coal Co.*, 265 Pa. 534, 109 A. 160 (1920); *Konopka et ux. v. McAteer*, 313 Pa. 510, 169 A. 778 (1934).

The affidavit and statement are separate pleadings.

"The affidavit is not the statement of cause of action which under the statute must be filed by the plaintiff within one year to prevent the attachment from being dissolved; the statement of cause of action which the statute means is a formal statement of claim." 10 Standard Pennsylvania Practice, Page 319; *Lehigh Coal & Navigation Co. v. Skeele Coal Co.*, supra; *Konopka et ux. v. McAteer*, supra.

"Where plaintiff was ruled to file an affidavit of cause of action and filed a statement of claim in re-

sponse to the rule, but then stipulated that this should be entitled, and accepted as, the affidavit of cause of action, and did nothing more, it was held the writ must abate for failure to file a statement of claim within a year." *Piland v. Citizens & Marine Bank,* 28 Del. Co. Rep. 31 (1938).

The entry of judgment against the defendant more than a year after the issuance of the writ when there was no statement of claim filed is not merely correcting a technical defect as the court below contends, but is a denial of due process to the defendant. The defendant had no opportunity to defend in this case. It was under no duty to enter an appearance or file an affidavit of defense unless and until a statement of claim was filed, and when none was filed within one year it was no longer under any duty to answer.

Suppose the defendant had a good defense to the plaintiff's claim. No competent counsel would have filed an affidavit of defense to the affidavit of cause of action. He would not have looked upon the paper filed by the plaintiff as a statement of claim, but as an affidavit of cause of action.

The purposes of the two are entirely different. The affidavit of cause of action is jurisdictional. It must aver nonresidence of the defendant, and property within the jurisdiction which can be made subject to attachment. It is not required to be filed, in an action ex contractu, until plaintiff is ruled to show his cause of action. The statement of claim is required to set forth only the allegations essential for plaintiff to establish his cause of action at trial, and need not contain allegations to justify the issuance of the original writ. *Brogan v. Bright-Brooks Lumber Co.,* 138 Pa. Superior Ct. 409, 11 A. 2d 205 (1939).

The mere fact that in actions ex contractu it is not necessary to file an affidavit of cause of action unless

and until asked to do so, does not change the paper filed in this case from an affidavit to a statement of claim.

Under the procedure outlined by statute, which the plaintiff was under duty to adhere to, defendant was justified in waiting for a statement of claim before entering an appearance or filing an affidavit of defense.

Never having been called upon to defend, the entry of judgment against the defendant nunc pro tunc after judgment against the garnishee and without a statement of claim ever having been filed, the defendant was denied due process of law. The judgment against the garnishee not being based upon a prior judgment against the defendant must therefore be set aside.

The garnishee could not waive the filing of the statement of claim. It may "waive defects and irregularities in the attachment as they affect him personally, but not as they affect the rights of the defendant in personam or in res. Indeed, if the defendant has not submitted to the jurisdiction, the garnishee should be permitted to attack the regularity and legality of the attachment proceedings at any stage, in so far as necessary to protect the rights of the defendant." 10 Standard Pa. Practice 390. It is his duty to do so even where he has allowed the proceedings to go to trial on his plea of nulla bona. . . . *Melloy's Sons v. Deal & Burtis,* 124 Pa. 161, 16 A. 747 (1889).

"It is . . . the garnishee's duty to see that the property of the defendant is not applied in satisfaction of the plaintiff's claim unless the latter has established his demand against the defendant in strict compliance with statutory requirements. Assuming such to be the duty of the garnishee, he should be permitted to attack the regularity and legality of the attachment at any step of the proceedings." *Keystone Brewing Co. v.*

*Canavan,* 221 Pa. 366, 372, 70 A. 785 (1908). See Standard Pennsylvania Practice Vol. 10, Page 390.

The garnishee not only had a right but a duty to raise this question even after judgment had been entered against it.

The scire facias (on the garnishee to appear) is predicated upon a valid judgment, and if the garnishee is aware no such judgment exists, he is bound to interpose the fact in defense. Failure to do so makes him liable to the defendant. *Melloy's Sons v. Deal & Burtis,* supra.

The exact question presented in this case has never been passed upon by an appellate court of this Commonwealth, although a number of cases cited above support our conclusion. The lower courts have had the exact question before them.

In *McBride v. Bartol et al.,* 5 D. & C. 71, 38 York 127 (1924) the court stated that the whole question of the case was whether or not the filing of the affidavit when the praecipe was issued is such a statement of claim as to fulfill the requirements of the law. The court there concluded that the affidavit and the statement of claim were two distinct papers filed for two distinct purposes, and held the affidavit could not be treated as a statement of claim.

In *Bonbrake v. West Virginia Pulp Products Co.,* 45 Pa. C.C. 191 (1916), it was likewise contended that an affidavit of a cause of action which was filed within one year of the issuance of the writ was in effect a statement of claim as called for by the Act because it gave the necessary information. In a well considered opinion, the court rejected this contention stating that the Act of 1897 required the filing of a statement which meant a formal statement of cause of action as distinguished from the affidavit of cause of action.

More weight should be given this opinion by us than is usual for a lower court opinion. In the first place it was written by the late SYLVESTER B. SADLER who distinguished himself not only as a lower court judge, but also as a Justice of the Supreme Court. In the second place it shows clearly that it was written only after most careful consideration and most extensive research.

The plaintiff, of course, is free to bring another action against the defendant wherever it is able to get service on the defendant. *Bonbrake v. West Virginia Pulp Products Co.*, supra, Page 198.

The judgment of the lower court is reversed; the rule to strike off the judgment against the garnishee is made absolute; and the judgments in favor of the plaintiff and against the garnishee and against the defendant are both stricken off, and the writ dissolved.