## United Silk Mills Company v. Max Fishel, Inc.

*Foreign attachment—Rule to quash—Affidavit of cause of action—Amendment—Appearance—Conditional appearance—De bene esse—General appearance—Jurisdiction—Practice, C. P.—Rules of court.*

1. A rule of court providing that an application for a rule of a particular kind shall be supported by an affidavit as to the facts alleged does not apply to an application made up in its entirety of legal conclusions.

2. Where a rule of court provides that notice of the time and place of making a motion shall be given to counsel on the opposite side, a rule or order in pursuance of such motion will not be vacated where an affidavit by counsel for the motion that such notice was given is made and filed of record.

3. In foreign attachment a general appearance operates as a waiver of defects in the affidavit of the cause of action.

4. Where a defendant in a foreign attachment enters a conditional appearance for the purpose of moving that the writ be quashed and no action is taken under the appearance, and subsequently on the same day another and separate conditional appearance is entered for the sole purpose of praying for a rule to show cause why the writ should not be quashed, plaintiff cannot maintain that the defendant by his first appearance transcended the legitimate purpose of a conditional appearance, and that his appearance became general.

5. Defendant in a foreign attachment may, under a special appearance, challenge the jurisdiction of the court to exercise control of the property attached.

6. A foreign attachment will be quashed if the affidavit of the cause of action does not set out a good cause of action. It must set forth such facts as give the court jurisdiction, and must not depend upon conjecture and inference.

7. A motion to quash a writ of foreign attachment for an alleged defective affidavit of cause of action raises for decision nothing but the preliminary question whether defendant's property shall be held pending the determination of the litigation, and does not result in a final decision upon the subject-matter of the action.

8. Where a defendant in foreign attachment enters a conditional appearance for the purpose of quashing the writ, and the plaintiff thereafter takes a rule to amend the affidavit of cause of action, the acceptance of service of such rule by defendant, without the qualifying word "conditional," does not convert the original conditional appearance into a general appearance.

9. In such case, the defendant has the right to resist the prosecution of the claim by answer, demurrer or other procedure without destroying the effect of the original conditional appearance.

10. An affidavit of cause of action in foreign attachment is insufficient if it contains no allegation that defendant had property within the jurisdiction, or that there was any property in the hands of the garnishee belonging to defendant.

11. Such affidavit is also insufficient if it contains conclusions of law from facts not set forth, and contains no averments of facts as a basis for the assessment of damages.

12. An affidavit of cause of action in foreign attachment cannot be amended after a motion to quash where the purpose of the amendment is to cure jurisdictional defects after notice of the same by the motion.

Foreign attachment. C. P. Northumberland Co., Dec. T., 1923, No. 431.

*J. Fred Schaeffer* and *Samuel Gubin,* for plaintiff.

*Knight & Taggart* and *C. M. Clement,* for defendant.

LLOYD, J., April 7, 1924.—This is a proceeding in foreign attachment. The pleadings have developed for our consideration two rules. The first rule, issuing upon motion of the defendant, was directed to plaintiff to show cause why the writ of foreign attachment should not be quashed; the second, issuing upon motion of plaintiff, was directed to defendant to show cause why an amended affidavit of cause of action should not be allowed. Both rules were returnable March 3, 1924, and were argued together as a single rule. Each, however, is a distinct rule in itself and independent of the other. We shall dispose of both in this single opinion, but we shall treat and consider them separately.

From the records it appears that on Nov. 22, 1923, a foreign attachment issued, and on the same day the plaintiff filed an affidavit of cause of action; that on Dec. 3, 1923, the return-day of the writ, the sheriff in his return answered as follows:

"November 22nd, 1923, Attached as within commanded and more particularly about 192 Rolls of satin de chene, each roll containing about 100 yards, of the defendant Max Fishel, Inc., in the hands and possession of the Sunbury Converting Works, a Pennsylvania Corporation, within named garnishee, in the presence of Ida E. Myers and J. Wesley Zeigler, two creditable witnesses of my bailiwick, and at the same time served Sunbury Converting Works, a Pennsylvania Corporation, within named garnishee, by handing unto John J. Steller, General Superintendent and person in charge of the office and principal place of business of said Garnishee in the City of Sunbury, Pa., a true and attested copy of the within writ, and by making known unto him the contents thereof. December 3rd, 1923, *Nihil Habet* as to Max Fishel, Inc., within named defendant."

That on Jan. 7, 1924, by leave of court, the following præcipe, denominated "conditional appearance præcipe," was filed:

"And now, January 7, 1924, by leave of Court, Knight and Taggart and C. M. Clement appear in the above entitled case conditionally for the purpose of praying that the return may be quashed for the reasons filed."

And on the same day defendant again appeared conditionally for the purpose of praying for the first rule, and which, upon the following motion to quash, was awarded:

"Max Fishel, Inc., a foreign corporation defendant, by Knight & Taggart and C. M. Clement appearing in this behalf conditionally and for the sole purpose of praying for this rule, prays the court to grant a rule on the plaintiff, the United Silk Mills Company, to show why the writ of foreign attachment retained in this case should not be quashed for the following reasons:

"1. Plaintiff's affidavit of cause of action does not show the necessary jurisdictional facts to sustain the writ of attachment.

"2. There is no allegation that Max Fishel, the defendant, owns or possesses any real or personal estate in the County of Northumberland and State of Pennsylvania and within the jurisdiction of the court.

"3. The affidavit of cause of action does not allege that the goods and chattels described in the writ of attachment, viz., 192 pieces or rolls of satin de chene, each roll containing about 100 yards, is the property of the defendant or that it has any interest therein or title thereto.

"4. The averment in paragraph 2 of the affidavit of cause of action, sub-clause *D*, 'It is averred that defendant, Max Fishel, Inc., failed and neglected to furnish and deliver to plaintiff the materials called for in the said contracts to be furnished by them, the defendant. Upon demand by plaintiff, the defendant refused to carry out its contracts above mentioned. Defendant's refusal to perform its covenant made it impossible for plaintiff to perform its covenant to manufacture the goods called for in said contracts,' is a conclusion and an insufficient statement of fact, in that it does not state how, by what means, when or where the refusal of the defendant and the demand of the plaintiffs therein set up occurred or how or by what means the plaintiff was prevented from performing its covenant, if any, with the defendant.

"5. Because the averment in the 2nd paragraph of the cause of action, clause *B,* and the exhibits attached does not show a contract between the plaintiff and defendant for the breach of which there can be a recovery.

4 D. & C.

"6. Because the averments in paragraph 2 of the cause of action, section F, do not aver how or when the defendant refused to accept the material, and whether orally or in writing; nor is there any legal averment that such refusal constituted a breach of contract or how or why the plaintiff was damaged thereby.

"7. Because the affidavit of cause of action is so uncertain that it does not set forth a good cause of action or give adequate notice to the garnishee of its rights and liabilities.

"8. Because the facts as averred in the affidavit of cause of action would not support or sustain a verdict and judgment against the garnishee."

That on Feb. 18, 1924, the second rule was awarded, the issuance of which was waived and service thereof accepted at bar by attorneys for defendant; and on March 3, 1924, the defendant filed a paper, denominated "special answer," in the following language:

"And now, to wit, March 3, 1924, come Knight & Taggart, Attorneys for Max Fishel, Incorporated, into court especially for the purpose of making answer to the rule to show cause why amendments to the affidavit of cause of action should not be allowed, and not for the purpose of appearing generally, and answers that said amendments as alleged in the petition of the plaintiffs and said amended affidavit may not be filed as a matter of law, and are not permissible as a matter of law, and request that the same be placed before the court for argument."

### First rule.

Upon the oral argument and by its brief, the plaintiff challenges the right of defendant to maintain this rule for the following reasons:

"1. Because its motion to quash is not verified by an affidavit.

"2. Because no notice of the time and place of making said motion was given to counsel for plaintiff.

"3. Because the defendant has not filed exceptions, verified by affidavit, within four days after the return-day of the writ.

"4. Because the defendant, by its motion to quash and by waiving issuance and acceptance of plaintiff's rule to show cause why an amendment to the affidavit of action should not be allowed, appeared generally and thereby waived all defects in the affidavit of cause of action."

The first reason is predicated upon Rule 33 of this court, which provides: "In all petitions and motions to the court in the nature of an application for a rule to show cause, or any other interlocutory proceeding to be placed upon the argument list, the facts alleged in the petition or application shall be verified by affidavit."

Manifestly, under this rule, the affidavit required is in verification of facts only. And as defendant's motion, supra, is made up in its entirety of legal conclusions, no affidavit in verification thereof is required. This reason cannot be sustained.

The second reason is predicated upon Rule 28 of this court, which provides: "No motion will be entertained in any matter pending before the court in which resident counsel have appeared on the opposite side, without proof that notice of the time and place of making such motion has been given to the opposite resident counsel. This rule shall apply to all petitions, interlocutory orders and decrees in any proceeding pending in the court. Any motion made or decree entered in violation of this rule will be vacated and set aside at once on the application of the opposite party, and without hearing."

There was some contention upon the oral argument as to whether or not the notice required by this rule had been given. The provisions of the rule relat-

ing to the proof of such notice have been met by an affidavit of counsel and filed with the records of this case. This reason is dismissed.

The third reason is predicated upon Rule 3 of this court, which provides: "An appearance *de bene esse* shall become general unless, within four days after the return-day of the writ, the party entering the appearance shall file exceptions, verified by affidavit, to the writ or manner of service thereof."

Counsel for plaintiff contend that defendant's appearance of Jan. 7th is tantamount to an appearance *de bene esse;* while counsel for defendant contend that it is "special" or "conditional," vitally different from a *de bene esse,* and as such is not within the purview of said Rule 3.

As the records of this case now stand, it is not necessary to pass upon these contentions, for the reason that when the defendant entered its said appearance the original writ had already been returned, to wit, Dec. 3, 1923, and there was no other outstanding writ to be returned, unless the rule to show cause, awarded Jan. 7, 1924, be considered as a writ; but as this rule was not returnable until March 3, 1924, the day upon which argument was had and this reason urged, there still remained four days in which a compliance with said rule might be made. Conceding, therefore, without deciding, that defendant's contention is correct, the complaint is, nevertheless, premature and the reason cannot be sustained.

In support of the fourth reason, the contentions of counsel for plaintiff may be substantially stated as follows:

"1. That defendant, by its motion to quash the attachment, transcended the scope and legitimate purpose of its conditional or special 'appearance.

"2. By the terms of the fifth, seventh and eighth paragraphs of its motion to quash, the defendant raised an issue on the merits and on non-jurisdictional questions.

"3. That in waiving issuance and accepting service of plaintiff's rule, the defendant was not under the protection of its special or conditional appearance.

"4. That for any or all of these reasons, the defendant's special or conditional appearance must now be treated as a general appearance—the legal effect of which is a waiver of any and all defects in the affidavit of cause of action."

As a legal proposition, it is unquestionably the settled law that a general appearance operates as a waiver of the defects in the affidavit. Hence, the question presented under these several contentions is as to the character of the defendant's appearance.

The defendant's first appearance was on Jan. 7, 1924, by "conditional appearance præcipe," *supra,* "for the purpose of praying that the writ may be quashed for the reasons filed." Counsel for plaintiff argue that defendant's motion to quash is in contravention of the purpose of this appearance. As a conclusion, that is correct, but that can in no way change the character of this appearance, for the reason that the motion to quash was not made under this appearance, but under an additional and separate appearance, conditioned for that very purpose. No action of any kind was taken under this appearance, and, in view of our disposition of the plaintiff's third reason, requires no further consideration.

The several contentions of plaintiff under the fourth reason must be tested in the light of defendant's appearance as stated in its motion to quash, *supra.*

Essentially, all of the authorities cited to our attention are to the effect that defendant, by special appearance, may, by motion to discharge the attach-

4 D. & C.

ment and without submitting to the jurisdiction of the court, challenge the right of the court to exercise control over his property; that is, to contest the ground of its jurisdiction. The limitations imposed upon special appearances are clearly set forth in the following cases:

In Rogers v. Penobscot Mining Co., 28 S. Dak. 72; 132 N. W. Repr. 792, also reported in 31 Am. & Eng. Ann. Cas., 1184, at page 1187, Judge McCoy, delivering the opinion of the court, said: "The term 'appearance' is used particularly to signify the act by which a person against whom suit has been commenced submits himself to the jurisdiction of the court. An appearance may be general or special. It is special if made for the sole purpose of objecting to the jurisdiction of the court over the person of the defendant: 3 Cyc., 502. If the defendant invoke the judgment of the court in any manner upon any question other than that of the jurisdiction of the court, or in resistance of the cause of action he is called upon by plaintiff and the rulings of the trial court to involuntarily defend, the appearance is general: 3 Cyc., 514, 515; South Omaha National Bank v. Farmers' and Merchants' National Bank, 45 Neb. 29, 63 N. W. Repr. 128; Bankers' Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N. W. Repr. 484; Ramsdell v. Duxberry, 17 S. Dak. 311, 96 N. W. Repr. 132; Benedict v. Johnson, 4 S. Dak. 387, 57 N. W. Repr. 66; Lower v. Wilson, 9 S. Dak. 252, 68 N. W. Repr. 546, 62 Am. St. Reps. 865; Fisher v. Crowley, 57 W. Va. 312, 50 S. E. Repr. 422, 4 Ann. Cas. 290. If the defendant becomes an affirmative actor in the proceedings and invokes the jurisdiction and power of the court in his own behalf upon matters outside of and beyond pure resistance of the plaintiff's cause of action, his appearance becomes general, and he thereby submits to the jurisdiction of the court. The test as to whether an appearance is special or general is the relief asked; and in determining the character of an appearance, the court will always look to matters of substance rather than to matters of form: Reedy v. Howard, 11 S. Dak. 160, 76 N. W. Repr. 304; Deming Inv. Co. v. Ely, 21 Wash. 102, 57 Pac. Repr. 353.

"In Bishop v. Fischer, 94 Kan. 105, 145 Pac. Repr. 890, also reported in Am. & Eng. Ann. Cas., vol. 1917 B, page 450, at pages 453, 454, it was said: 'Defendants are brought into court either by the service of process or some substitute therefor, or by voluntary appearance, and the voluntary appearance may be either general and for all purposes, or specially and for some particular purpose. Where the purpose to make it special appears, the court cannot enlarge it and make it general, for the extent to which defendant submits himself to the jurisdiction when he thus voluntarily comes in is determined by his own consent.'

"There is no infallible test for determining when the purpose of an appearance is special and when general. Of course, the mere statement that the appearance is special is not controlling, although it may forestall the ordinary presumption that an appearance is general. Apparently, the test applied by the Supreme Court of the United States is whether or not the party applying becomes 'an actor in the cause:' Merchants' Heat, etc., Co. v. Clow, 204 U. S. 286, 290, 27 S. Ct. 285, 51 U. S. (Law Ed.) 488. In reality this supposed test only states the problem in another way.

"In the case of Deming Invest. Co. v. Ely, 21 Wash. 102, 57 Pac. Repr. 353, it was said: 'The test as to whether an appearance is general or special is usually the relief asked. If the granting of the relief requested in the appearance is consistent with a want of jurisdiction over the person, the defendant may appear for a special purpose, without submitting himself to the jurisdiction of the court for any other purpose.'

"In the case of Blackburn v. Sweet, impleaded, 38 Wis. 578, it was said: 'Where the moving party asks some relief which can only be granted upon the hypothesis that the court has jurisdiction of the cause and person, this is a submission to the jurisdiction, and waives all defects in the service of process.'

"In the early case of Cohen v. Trowbridge, 6 Kan. 385, which has been followed many times, the syllabus reads: 'A motion in a cause based wholly on an alleged want of jurisdiction is not an appearance generally, or a waiver of any irregularity in the proceedings by which a party is attempted to be brought into court; but a motion, grounded wholly or in part upon error in the judgment, or upon irregularities, aside from the question of jurisdiction, is such waiver as constitutes an appearance.' "

These cases, though of foreign jurisdiction, are peculiarly applicable to the contentions before us, and the principles enunciated therein are in harmony with, and expressive of, the law as laid down by our own appellate courts.

The fifth, seventh and eighth paragraphs of defendant's motion to quash are the ones complained of. To our mind, it is quite clear that the sole purpose of these paragraphs, as well as the other paragraphs of this motion, was to challenge the jurisdiction of the court. Nor is there anything in them inconsistent with that purpose—nothing beyond a denial of jurisdiction. Moreover, the relief sought—the dissolution of the attachment—is entirely consistent with want of jurisdiction and could be granted on the hypothesis that the court had no jurisdiction. The defendant invokes no action of the court in its own behalf in matters beyond a resistance of the cause of action; nor is the relief sought upon any other ground than that of jurisdiction. The defendant's motion is not tantamount to a demurrer; neither does it ask for a decree that an action cannot be maintained against it; a fact that could not be adjudicated upon the mere motion to quash the writ, for the dissolution of the attachment does not terminate the suit; and neither does the affidavit set up a defence. The allegations that the affidavit of cause of action does not show a contract between the plaintiff and the defendant, for the breach of which there can be a recovery, and that the affidavit is so uncertain that it does not set forth a good cause of action or give adequate notice to the garnishee of its rights and liabilities, are stated to show that the affidavit was lacking in jurisdictional averments.

"An affidavit of cause of action in a proceeding in foreign attachment must set out a good cause of action and such facts as give the court jurisdiction and must not depend upon conjecture or inference. Where a suit is based on a contract for sale of goods, plaintiff must aver that he made or tendered delivery in accordance with the letter of the contract, setting out the methods of compliance in detail; he must aver refusal to accept. He must give the facts relating to the refusal and state whether it was oral or written:" McLeod v. Hyman, 272 Pa. 582; Mindlin v. Saxony Spinning Co., 261 Pa. 354.

Likewise, the allegation that the facts as averred in the affidavit of cause of action would not support a verdict and judgment against the garnishee is stated for the same purpose.

"Plaintiffs cannot ask to have the attachment preserved unless they show a cause of action which, if proved, would sustain a verdict:" Pottash v. Vietor, 274 Pa. 346.

The motion, read in this way and in the light of the rule that, in procedure, substance alone is to be regarded, clearly indicates a purpose consistent with the conditional appearance to quash the writ of attachment for jurisdictional reasons.

4 D. & C.

United Silk Mills Company v. Max Fishel, Inc.

The contention of plaintiff that defendant's motion raised an issue on the merits is not tenable. What we have heretofore said is germane to this contention, and the conclusion that the motion raises nothing but questions relating to jurisdiction is in itself an answer thereto. By way of further elucidation, it may be added that the motion is merely a challenge to the jurisdiction, raising for decision nothing but the preliminary question whether the defendant's property shall be held pending the determination of the litigation, and does not result in a final decision upon the subject-matter of the action.

The case of Lowe v. Swinehart Tire and Rubber Co., 211 Fed. Repr. 165, U. S. District Court, Southern District of New York, is applicable and authoritative. We extract therefrom as follows:

"It would not be asserted, I suppose, that the decision upon the motion to dissolve the attachment was a final adjudication of any fact in the action. No one supposes that it dispenses with proof upon the trial, or that any one may use it to help him out in the contest over the merits of the controversy. All it decides is whether the defendant's property shall be held pendente lite and to await the final decision of the cause itself. It is quite true that that question may, and in this case did, depend upon a provisional inquiry into the merits, and involved consideration of matters which would afterwards arise upon the trial, but that inquiry and that consideration are informal in character and inconclusive in effect.

"Where, however, the question contested is of the court's having personal jurisdiction, obviously the defendant must have the power to make a contest, or the matter will be taken against him as of course, and so the rule is well settled in such cases. If the question be to release his property from attachment, there are undoubtedly cases which hold that, even for that limited purpose alone, he raises at his peril any question which would be relevant to the main controversy (Raymond v. Nix, 5 Okla. 656, 49 Pac. Repr. 1110), yet it seems hardly just to expose a defendant to that choice. The determination which he invokes is not, as I have shown, one which, if unsuccessful, would in any event be conclusive. It would not bind him if he afterwards intervened to contest, nor his property if he allowed a default to be taken, since no determination is in that case necessary. He is, therefore, not in the position of one who invokes a court to decide a point in the controversy, while reserving his right to make the decision nugatory if it prove unsatisfactory. In the case of Davis v. C. C. C. & St. L., 217 U. S. 157, 174, 30 Sup. Ct. 463, 54 L. R. A. Ed. 708, 27 L. R. A. (N. S.) 823, 18 Ann Cas. 907, the Supreme Court decided that a motion to vacate an attachment, supported by three affidavits, did not constitute an appearance. It is true that the invalidity of the atachment did not touch the merits; but, as I think I have shown, it never can, since the decision involves only the question of the release of the property from levy. I think, therefore, that the distinction is not good which would limit the right to vacate the attachment only to questions which will not be considered in disposing of the cause."

In support of this contention we have been cited to Byers v. Byers, 208 Pa. 23, and Lehigh Coal and Navigation Co. v. Skeele Coal Co., 265 Pa. 534.

Neither of these cases is applicable. In the first case there was a trial on the merits after the defendant's plea to the jurisdiction had been overruled and after the filing of an answer, averring "matters which, if found to be true, would have been a complete defence to the defendant's cause of action as set forth in his bill." In the second case no affidavit of cause of action was filed, and the decision was upon a motion to strike off a judgment based upon an alleged insufficiency of the statement of claim. It is also contended that

the rule to show cause why the amendment should not be allowed in no way involved a jurisdictional question, and that defendant, by waiving issuance and accepting service thereof, voluntarily and unqualifiedly submitted to the general powers of the court. This contention would be correct if the rule to amend were not related to the original affidavit; but the amendment upon which the rule was founded sought to enlarge the affidavit by supplying the very defects complained of in defendant's motion to quash. The original affidavit of cause of action was not withdrawn, and, hence, the amendment, if allowable, became a part of and must be read in connection with it. The amendment was in furtherance and in prosecution of the cause of action as originally presented, and as such the defendant had a right to resist it to the final end by answer, demurrer and other procedure, without destroying the effects of its conditional appearance as contained in its motion to quash, provided its action went no further than a necessary resistance to plaintiff's action. The mere fact that defendant accepted service of the rule without the qualifying word "conditional" is not controlling. The test is, as above noted, the relief sought; and in determining the character of the appearance, the court will always look to matters of substance rather than form. The action of the defendant in accepting the service of said rule must be taken to have been made under the conditional appearance as contained in its motion to quash.

We have examined the authorities cited to us by plaintiff in support of its contention, but the present case is distinguishable from them by the fact that the appearance here is conditional and for the purpose of quashing the writ because of jurisdictional defects, while in the cited cases the appearance was either strictly a *de bene esse* or an appearance arising out of the filing of a plaintiff's statement. These cases establish no principles in conflict with the above conclusion.

The argument of counsel for plaintiff presupposes that the amendment is allowable. And, to the end that our views should be expressed with reference to its position, we have thus far been considering this contention in the light of that supposition. But, for the reasons hereinafter set out in our disposition of the second rule, we hold that the amendment is not allowable. The contention must, hence, be viewed from another angle. The effect of this disallowance is to purge the records of the amendment and all proceedings thereunder, thus leaving the conditional appearance of the defendant unaffected by its waiver and acceptance of plaintiff's rule. A pleading, to be binding upon a litigant, must be such as is legally contemplated by the proceedings under which it is offered, otherwise its real purpose is destroyed. Plaintiff's amendment having no legal status, the action of defendant thereunder is without legal effect.

The plaintiff's contentions being disposed of, we are brought to the question whether the original affidavit of cause of action is sufficient.

In the case of Coward *v.* Dillinger, 56 Md. 59, the court said: "In cases of foreign attachment, the jurisdiction exercised by the court depends entirely upon statutory provisions. The defendant being a non-resident, and, therefore, beyond the reach of the process of the court, personal service is out of the question. All property, however, within the limits of the state, whether belonging to residents or non-residents, is subject to its laws, and the state has a right to prescribe how and in what manner such property shall be subjected to the claims of creditors. It is upon this principle that legislation in regard to attachment laws is founded. The proceeding is *in rem* against the *res*, and not against the person. Being, then, a jurisdiction derived from

4 D. & C.

statutory law, no principle is better established than that the attachment proceedings must upon their face show affirmatively that the requirements of the statute have been substantially complied with, otherwise the court issuing the attachment would be acting without jurisdiction, and the judgment thereon rendered would be void."

4 Troubat & Haley (6th ed.), § 4, page 2978, is to the same effect: "The proceeding by foreign attachment is *ex parte* and statutory. The provisions of the statute must be strictly followed."

The requirements of a cause of action in a foreign attachment are laid down in the following case:

Mindlin v. Saxony Spinning Co., 261 Pa. 354, Mr. Justice Walling, delivering the opinion of the court, said: "The affidavit must set out a good cause of action and such facts as give the court jurisdiction, and must not be ambiguous nor depend upon conjecture or inference. See Hallowell v. Tenney Canning Co., 16 Pa. Superior Ct. 60. The object of a writ of foreign attachment is to compel the appearance of defendant; and, to authorize such writ, he must have property within the jurisdiction of the court, otherwise there is nothing to attach and no means of compelling an appearance or of securing plaintiff's claim. See Raymond v. Leishman, 243 Pa. 64; Pennsylvania R. R. Co. v. Pennock, 51 Pa. 244; also opinion of Sharswood, P. J., in Delaware Mutual Ins. Co. v. Walker, 1 Phila. 104. The first object of such proceeding is to seize the property of the absent debtor; when there is none, the action falls. To support the writ, it is as necessary that defendant have property within the jurisdiction as that he be beyond it. Both are essential and must be averred. Where the writ has been served, it must appear in the affidavit that the property attached is that of the defendant. It is as possible to ascertain the ownership of property as the whereabouts of a defendant."

Continuing further, the Justice says: "There are more serious objections. The affidavit purports to set out a claim for $12,417.21 for damages on account of defendant's failure to deliver cotton yarn in accordance with a certain contract based on plaintiff's order. . . . The plaintiff avers that on May 15, 1917, defendant finally and unequivocally refused to deliver the balance of the yarn; but that is a conclusion, and the real facts are not set out, and it does not appear whether such alleged refusal was oral or written. The measure of damages would be the difference between the market price and the contract price at the time and place of delivery. See Hauptman v. Pennsylvania W. Home for Blind Men, 258 Pa. 427. Here, there is nothing to show when the goods should have been delivered or what the market price then was; hence, no basis for assessment of damages. The affidavit sets out the market price on one day only, to wit, May 15, 1917. But there is nothing to indicate that it was the time called for in the contract for the delivery of all or any of the goods in question. Plaintiff could not change defendant's liability by demanding a delivery at a time different from that named in the contract. The defects above mentioned, and other uncertainties in plaintiffs' affidavit of cause of action, fully warranted the order of the court below dissolving the attachment."

Tested in the light of this authority, the plaintiff's affidavit is insufficient in the following particulars:

1. Because it contains no allegation or averment that the defendant has property within the jurisdiction.

2. Because it does not state when the goods should have been delivered.

3. Because sub-division (d) of paragraph 2 contains conclusions of law from facts not set forth.

4. Because it contains no averment of facts as a basis for the assessment of damages.

5. Because it does not aver that there is any property in the hands of the garnishee belonging to the defendant.

### Second rule.

In passing upon this rule, it is important to note that the amendment came after defendant's motion to quash had been filed; and from the character of the amendment, it is clear that its evident purpose was to cure the defects in the affidavit of cause of action, as pointed out in the defendant's motion to quash.

Our attention has been called to a number of cases in which amendments have been allowed. From a careful analysis of all of the cases cited to us by both parties, it is undoubtedly the rule that where the amendment is formal, aiming at precision of statement or for the purpose of making more explicit what already had been averred, it is allowable; but where it is substantive and seeks to cure a jurisdictional defect after defence has been taken, the general rule, and what occurs to us as being the better practice, is that it is not allowable.

The case of Salwen *v.* Tappan, 30 Dist. R. 937, is in point. It reflects the law both in spirit and purpose. The reasoning is so peculiarly pertinent to the instant case that it precludes the necessity for further elaboration on our part. We adopt it as the law applicable to the case at bar, and extract therefrom as follows: "The remedy by this process [foreign attachment] is strictly statutory and rather drastic in operation. Hence, the general rule is against the privilege of amendment in matters vital to the jurisdiction, after notice of defects brought home to plaintiff through defendant's pleadings. The reason is obvious. The contrary practice would serve the purposes of crafty and vexatious litigation. The plaintiff in such case could experiment with the ingredients of a lawsuit until he had assembled those which would tie up his adversary's property. The most pointed defect in the original affidavit here was his omission to mention any property subject to attachment." The court says further that the burden is upon the plaintiff to show that the amendment should be allowed. And in discussing Hallowell *v.* Tenney Canning Co., 16 Pa. Superior Ct. 60, relied upon by plaintiff, the court says: "On close analysis, it is not apparent that the one averment in question there supplied any unequivocal omission. It only appears by the opinion that what was added was the averment of defendant's residence in California by reason of being a corporation of that state. For anything appearing to the contrary, this may have been nothing other than a more explicit statement of that which in the original affidavit had been left somewhat ambiguous on the subject of non-residence. As such, it would involve no departure from the well-settled rule that in matters of formality, aiming merely at precision of statement, the affidavit is amendable. That is to say, amendments have been repeatedly allowed for the purpose of making more explicit what had been averred rather inaptly, as will sometimes happen in the haste to get service of a writ," and the court then cites the two Philadelphia cases of Brock *v.* Brock and McCulley *v.* Chisholm as examples of this kind, and concludes: "Manifestly, the issue in this case is not on a question of formality, but of essential substance. Plaintiff is not seeking to clarify an obscure or ambiguous pleading, but to introduce a new averment in order to supply a radical defect after defence taken for that omission."

4 D. & C.

United Silk Mills Company *v.* Max Fishel, Inc.

The amendment in the present case, being substantial and not formal and aiming to cure jurisdictional defects after notice of the same by defendant's motion to quash, is not allowable, and the rule must be discharged.

And now, April 7, 1924, it is hereby ordered, adjudged and decreed that the rule to show cause why the writ of attachment should not be quashed is hereby made absolute and the writ of attachment dissolved; and it is further ordered, adjudged and decreed that the rule to show cause why the amendment to plaintiff's affidavit of cause of action should not be allowed is hereby discharged and the said amendment is refused.

An exception is noted and bill sealed for plaintiff as to each and both of the above rules.